UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADELQUIN D., | Case No.: 24-cv-2023-SBC |
| Plaintiff, | |
| v. | **ORDER AFFIRMING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |
| FRANK BISIGNANO, Commissioner of Social Security,[1] | |
| Defendant. | |

On October 29, 2024, Plaintiff Adelquin D.[2] initiated this action seeking judicial review under 42 U.S.C. § 405(g) of the finding by Defendant Commissioner of Social Security that she is no longer disabled under the Social Security Act. (Dkt. No. 1.) Defendant filed the Administrative Record on January 29, 2025. (Dkt. Nos. 9-10.) Plaintiff

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano, the current Commissioner of Social Security, as the defendant in this action.

[2]     The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. *See* Civ LR 7.1(e)(6)(b).

1

filed a merits brief on April 7, 2025. (Dkt. No. 13.) Defendant filed a responsive brief on June 5, 2025. (Dkt. No. 17.) Plaintiff filed a reply on June 20, 2025. (Dkt. No. 18.)

For the following reasons, the final decision of the Commissioner is **AFFIRMED**.

## I.    BACKGROUND

**A.    Factual and Procedural History**

Plaintiff was born in 1975 and is currently 51 years of age. (AR 150.)[3] She has a bachelor's degree in mathematics, served in the Navy from 2009 to 2010, and held previous employment as a business finance manager. (AR 1203-04.) On March 21, 2018, she was found disabled as of August 30, 2017, due to primary diagnoses of depressive, bipolar and related disorders and secondary diagnoses of schizophrenia spectrum and other psychotic disorders, which were found to meet Listing 12.04.[4] (AR 150.) On September 15, 2020, in a continuing disability review, the agency determined that Plaintiff was no longer disabled as of September 1, 2020. (AR 172, 187-90.) A state agency Disability Hearing Officer upheld this determination upon reconsideration. (AR 206-14.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 225.)

ALJ Kevin W. Messer conducted an administrative hearing on May 18, 2023 (AR 113), and a supplemental hearing on December 7, 2023 (AR 84). On April 3, 2024, the ALJ issued a decision concluding that Plaintiff's disability ended on September 1, 2020. (AR 16-31.) Plaintiff requested a review of the ALJ's decision; the Appeals Council denied

---

[3]    "AR" refers to the Administrative Record filed on January 29, 2025. (Dkt. Nos. 9-10.) The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

[4]    *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04 (depressive, bipolar and related disorders).

the request on September 30, 2024. (AR 1-7.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARDS

### A.    Qualifying for Disability Benefits

The Commissioner employs a five-step analysis outlined in 20 C.F.R. § 404.1520 to determine whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999) (describing five steps). At step one, the Commissioner determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the agency considers the medical severity of the impairment. *Id.* § 404.1520(a)(4)(ii). At step three, the Commissioner determines whether the impairment meets or equals one of a list of specific impairments described in the regulations. *Id.* § 404.1520(a)(4)(iii). At step four, the agency considers whether the claimant is able to perform their past relevant work. *Id.* § 404.1520(a)(4)(iv). At the last step, step five, the Commissioner evaluates the claimant's ability to perform other work. *Id.* § 404.1520(a)(4)(v).

### B.    Decisions of Continuing Disability

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted. 20 C.F.R. § 404.1594(a). Such a person is no longer entitled to benefits when substantial evidence demonstrates (1) "there has been any medical improvement in the individual's impairment" and (2) "the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1)(A)-(B). To determine whether there has been medical improvement, an ALJ is required to "'compare the current medical severity' of the claimant's impairment to the medical severity of the impairment 'at the time of the most recent favorable medical decision that [the claimant] w[as] disabled.'" *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (citing 20 C.F.R. § 404.1594(b)(7)).

3

The Commissioner follows an eight-step evaluation process outlined in 20 C.F.R. § 404.1594 to make a determination of continuing disability. 20 C.F.R. § 404.1594(f). At step one, the Commissioner determines whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1594(f)(1). At step two, the agency determines whether the impairment meets or equals the severity of an impairment listed in the regulations. *Id.* § 404.1594(f)(2). At step three, the Commissioner determines whether medical improvement has occurred. *Id.* § 404.1594(f)(3). At step four, the agency determines whether medical improvement is related to the claimant's ability to work. *Id.* § 404.1594(f)(4). At step five, if needed, the Commissioner must determine if an exception to medical improvement applies. *Id.* § 404.1594(f)(5).[5] At step six, the agency determines whether all the claimant's current impairments are severe. *Id.* § 404.1594(f)(6). At step seven, the Commissioner considers whether the claimant can perform their past relevant work. *Id.* § 404.1594(f)(7). At the final step, step eight, the agency evaluates the claimant's ability to perform other work. *Id.* § 404.1594(f)(8).

C.      **Judicial Review of an ALJ's Decision**

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and a decision denying benefits will be set aside "only if it is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citations omitted). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53

---

[5]      A step five finding is required only if the Commissioner concludes at step three that there has been no medical improvement or at step four that the medical improvement is not related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(5).

F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration ("SSA") for further proceedings. *Id.*

### III.    DISCUSSION

**A.    ALJ's Decision**

The ALJ identified Plaintiff's previous March 26, 2018 decision, in which she was found disabled, as the "comparison point decision" ("CPD"). (AR 18.) Applying the eight-step evaluation process outlined in 20 C.F.R. § 404.1594(f) to determine whether Plaintiff's disability would continue or end, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity. (*Id.*) At step two, the ALJ found that since September 1, 2020, Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the regulations. (*Id.*) At this step, the ALJ employed the special technique described in the regulations to rate the degree of functional limitation resulting from Plaintiff's mental impairments. *See* 20 C.F.R. § 404.1520a(a), (b)(2). A five-point scale (none, mild, moderate, marked, and extreme) is used to rate the degree of functional limitation in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate,

persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 404.1520a(c)(3)-(4).[6] If the degree of limitation is rated as "none" or "mild," the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). The ALJ determined here that Plaintiff had a "mild" limitation in understanding, remembering, or applying information; a "moderate" limitation in interacting with others; a "moderate" limitation in concentrating, persisting, or maintaining pace; and a "mild" limitation in adapting or managing oneself. (AR 19.)

At step three, the ALJ found that medical improvement occurred on September 1, 2020. (AR 20.) The ALJ determined at step four that Plaintiff's medical improvement was related to the ability to work because the impairment in her CPD no longer met or equaled the same listing that was met at the time of the CPD. (*Id.*; *see also* 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.").) A step five finding was not required, in light of the ALJ's step three and step four findings. *See* 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ found that Plaintiff's severe impairments as of September 1, 2020, included schizoaffective disorder, bipolar type; depressive disorder; and cervicalgia. (AR 21.)

The ALJ next evaluated Plaintiff's residual functional capacity ("RFC") as of September 1, 2020. (AR 21-22.) He found Plaintiff could perform medium work, subject to some limitations, and could "understand, remember, and carry out simple, routine tasks; [have] occasional interaction with the general public, only occasional work-related, non-

---

[6]    These four functional areas are known as the "paragraph B" criteria due to the manner in which they are categorized in the listing of impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

personal, non-social interaction with co-workers and supervisors, and is limited to jobs requiring only simple work-related decisions however can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work." (AR 21-22.)

At step seven, the ALJ found that since September 1, 2020, Plaintiff had been unable to perform her past relevant work. (AR 29.) Finally, the ALJ determined at step eight that Plaintiff could perform the requirements of the representative occupations of industrial cleaner; laborer, stores; and laundry laborer. (AR 30.) Therefore, the ALJ concluded that Plaintiff's disability ended on September 1, 2020, and she had not become disabled again as of the date of his decision. (AR 31.)

**B.      Plaintiff's Arguments**

Plaintiff contends that substantial evidence does not support the ALJ's determination that her disability ceased as of September 1, 2020. (Dkt. No. 13 at 5-11.) She argues that the ALJ failed to "show his work" and "'build an accurate and logical bridge' from the evidence to [his] conclusions," resulting in a decision that fails to "provide sufficient reasoning that allows [for] review." (*Id.* at 6, 10.) Notably, Plaintiff challenges only the ALJ's assessment of her mental impairments. (Dkt. No. 13 at 6 n.1.) As will be discussed below, Plaintiff's arguments are without merit.

**1.      Substantial evidence supports the ALJ's findings of medical improvement as of September 1, 2020**

To determine whether there has been medical improvement, an ALJ is required to "'compare the current medical severity' of the claimant's impairment to the medical severity of the impairment 'at the time of the most recent favorable medical decision that [the claimant] w[as] disabled.'" *Attmore*, 827 F.3d at 873 (citing 20 C.F.R. § 404.1594(b)(7)). Here, the ALJ stated the following regarding his determination that Plaintiff's medical improvement occurred on September 1, 2020:

The medical evidence supports a finding that, by September 1, 2020, there had been a decrease in medical severity of the impairments present at the time of the CPD.

Since September 1, 2020, the claimant has not required emergency room or hospital treatment for her mental health symptoms. This is in stark contrast to the long in-patient psychiatric hospitalization at the CPD for the period from February 19, 2019, through May 14, 2019, when the claimant was found incompetent to stand trial due to severe mania.

Progress notes document that the claimant has, for the most part, been doing well once she was adherent to the prescribed psychotropic medication regimen. Most mental status examinations have been unremarkable. The improvement in functioning is affirmed by attending psychiatrist Fiza Singh, M.D., in a note dated May 25, 2022; [s]he opined that the claimant's functioning is "improved a great deal" since 2019. In addition, on September 26, 2022, Dr. Singh opined that the mental health treatment has been very effective in reducing the claimant's symptoms and restoring her functionality.

The medical improvement since September 1, 2020, is also indicated by the claimant's ability to not only care for her own needs but also those of two seniors. At one time, she was taking care of her aunt and her father until her aunt moved to a senior facility.

(AR 20 [exhibit references omitted].)

Additionally, in finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record, the ALJ observed:

In July 2021, [Plaintiff] was still experiencing anxiety and paranoia which were worse at night. By November 2021, she reported no paranoia or auditory hallucinations.[7] Progress notes show minimal auditory hallucinations when

---

[7]   Plaintiff's three-month hospitalization at Metropolitan State Hospital from February to May 2019 was due to a manic episode in which "[s]he was hearing voices of demons and angels, was hyper religious." (AR 916; *see also* AR 850-52.) She went to jail for three months and was placed on three years of probation due to an incident in which she followed

she is taking her medications. . . . Her activities are also consistent with the improvement of her mental impairments. For example, she was doing so well in May 2022 that she wanted to go back to school.[8] In June 2022, she was taking care of both her aunt and her father as well as volunteering. After her aunt moved to a senior facility, she has continued to care for her father. She has been able to travel (went to Texas). In March 2023, one of her aunts visited her from the Philippines and she was looking forward to driving up and down the [coast].

. . . .

The claimant's allegation of continuing disability due to her mental and physical impairments is not consistent with her activities that include her ability to care for her ill father. She prepares her own meals and does household chores. She has no problems with personal care. She has a valid driver's license and is able to drive. She shops and goes to the post office. She was taking care of her aunt before her aunt moved to senior living. She takes care of her father by taking him to his appointments (he does not drive). She goes to Church every Sunday. She also testified that she built a fence at her house.

The claimant's ability to frequently travel undermines her allegations that she is too functionally limited to work on a sustained basis. In November 2019, she was noted to have returned from a trip to Italy. She then flew to Canada and to the Philippines for the Thanksgiving holidays. She visited her family in Texas in September 2021 and then went to Canada for one month. She testified that she travelled to Washington, DC. . . .

Since September 1, 2020, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Since

her supervisor in her car, and "bumped" him with her car because she thought "he was a villain" and heard voices that "he's going to do harm to my family." (AR 1201, 1343.)

[8]     Later in 2022, Plaintiff planned to attend an informational meeting on trade schools for veterans, and took the pre-test required for enrollment in electrician school. (AR 1021, 1479.) She informed Dr. Singh that she hoped to use the remaining three years on her GI bill to further her education and new career. (AR 1479.)

9

24-cv-2023-SBC

September 1, 2020, the claimant has not required emergency room or inpatient hospital treatment.[9] She went through the CORE [Center of Recovery Education through Veterans Affairs] program from April 2021 through July 2022.[10] Since then, she has had psychiatric medication management. The claimant's course of treatment since September 1, 2020, has generally reflected a conservative approach.

(AR 23, 24 [exhibit references omitted].)

Plaintiff contends that the ALJ failed to "show his work and articulate a logical bridge" from the evidence to his conclusions. (Dkt. No. 13 at 6.) But contrary to this argument, the ALJ provided more than sufficient explanation, supported by substantial evidence in the record, to substantiate his findings, and the Court is easily able to discern his reasoning. The ALJ was required to examine the evidence in the broader context of Plaintiff's improvement. *Attmore*, 827 F.3d at 877. The examples an ALJ chooses to rely on in demonstrating medical improvement "must *in fact* constitute examples of a broader development." *Attmore*, 827 F.3d at 877 (citing *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014)). Here, the evidence relied on by the ALJ, including the medical opinions and treatment notes of Plaintiff's own treating psychiatrist, Dr. Singh, constituted substantial evidence of a "broader development" of sustained improvement since September 1, 2020. *Garrison*, 759 F.3d at 1018.

///

///

///

---

[9]   The Court notes that Plaintiff presented to the psychiatry emergency department at the VA on January 19, 2021, with a one-week history of insomnia. (AR 1243-46.) Her mental status examination was normal, and Plaintiff was provided a prescription medication to assist with her insomnia. (AR 1246.)

[10]   "CORE is a specialty mental health clinic serving Veterans diagnosed with psychotic disorders and experiencing difficulties with psychosocial functioning." (AR 1516.)

24-cv-2023-SBC

**2.** **The ALJ's finding that Plaintiff's disability ended on September 1, 2020, is consistent with the medical evidence**

Plaintiff next argues that there was nothing in Dr. Singh's May 25, 2022 and September 26, 2022 medical opinions, which the ALJ found to be persuasive and partially persuasive, respectively, reflecting that the improvement in Plaintiff's symptoms was related to her ability to work as of September 1, 2020. (Dkt. No. 13 at 7-9.) On May 25, 2022, Dr. Singh wrote:

> [Plaintiff] has been under my care intermittently in the VA San Diego Healthcare System since 03/25/2015. She returned to care in 07/2019 after an extended stay in a State Hospital. Since that time, she has been taking medications regularly, and has been engaged in a psychosocial rehabilitation program. In my opinion, [Plaintiff's] functioning is improved a great deal since 2019.

(AR 1023.) On September 26, 2022, Dr. Singh completed a "Medical Source Statement" form indicating that Plaintiff's treatment with antipsychotic and mood stabilizing medication, and an antidepressant at times, had been "highly effective in reducing symptoms and restoring functionality." (AR 1313.) She indicated that Plaintiff had only "no[]" or "mild" mental disorder functional limitations other than a "moderate" limitation with understanding and responding to social cues. (AR 1314-15.) She anticipated that Plaintiff's impairments or treatment would cause work absences less than once a month, and that Plaintiff would never be off task in the workplace due to mental health symptoms. (AR 1316.)

Plaintiff's argument that Dr. Singh's opinions in 2022 do not "relate back" to her condition on September 1, 2020, ignores that these opinions are consistent with Dr. Singh's treatment notes in 2020. For example, Plaintiff's September 2, 2020 visit notes, authored by a resident physician, Dr. Sloan, under Dr. Singh's supervision, indicate that Plaintiff's last manic episode was in 2018. (AR 951.) Although Plaintiff described some "lows in her mood" while traveling back home from Canada, she overcame this. (*Id.*) Plaintiff's mental

11

status examination was normal. (AR 952.) Dr. Sloan noted that Plaintiff's mood was stable, she was tolerating medications well without side effects, and had not had any auditory verbal hallucinations. (AR 953.) The testifying medical expert, Dr. Miller, relied on this note to support her opinion that medical improvement occurred as of this date. (AR 96, citing AR 950-54 (describing the September 2, 2020 treatment note as "the first strong indicator from Dr. Singh that [Plaintiff's] mood was stabilized").) Similarly, Plaintiff's October 14, 2020 visit notes recounted that Plaintiff was looking for a job and was interviewing for Home Depot the following day. (AR 945-46.) Plaintiff described feeling anxious when she was alone but stated that going for a walk or watching TV helped to calm her. (AR 946.) Plaintiff again denied having any auditory verbal hallucinations or side effects from her medications. (*Id.*) Her mental status examination remained normal. (AR 946-47.) The Court finds these treatment records, as well as Dr. Miller's opinion, are consistent with the ALJ's finding that Plaintiff's disability ended on September 1, 2020.

### 3. Plaintiff's medical records submitted after the ALJ's decision do not relate to the period at issue

Plaintiff further contends that the records she submitted to the Appeals Council following the ALJ's decision undercut Dr. Singh's September 26, 2022 opinion. (Dkt. No. 13 at 9.) These records are dated between May 27, 2024, and September 5, 2024. (AR 40-75.) The Appeals Council determined that these records did not relate to the period at issue and thus did not affect the decision about whether Plaintiff was disabled on or before April 3, 2024, the date of the ALJ's decision. (AR 1-2.) In *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012), the Ninth Circuit held that the administrative record includes evidence submitted for the first time to the Appeals Council, and that such evidence is a part of the "record as a whole." (*Id.* at 1162-63.) In doing so, the circuit court observed that the Commissioner's regulations permit claimants to submit additional evidence to the Appeals Council and require that it consider the evidence so long as it relates to the period on or before the date of the ALJ's decision. (*Id.* at 1162 (citing 20 C.F.R. § 404.970(b)).)

12

But here, the records submitted to the Appeals Council and upon which Plaintiff relies do not relate to the period before the ALJ's April 3, 2024 decision; rather, they relate to Plaintiff's condition following the ALJ's decision. (*See* AR 40-83.) As set forth in the regulations, "If you submit additional evidence that does not relate to the period on or before the date of the [ALJ] hearing decision . . . the Appeals Council will . . . advise[] you of your right to file a new application." 20 C.F.R. § 404.970(b); *see also Hudson v. Bowen*, 849 F.2d 433, 435 (9th Cir. 1988) (stating that the district court's function is to review the correctness of the Commissioner's decision at the time it was made). Therefore, there is no need to remand to the ALJ for consideration of these records.

### 4.      The ALJ's determination of Plaintiff's mental RFC did not constitute a lay medical opinion

Finally, Plaintiff argues that the ALJ's findings regarding her mental RFC "represent nothing more than a lay medical opinion" and the ALJ exceeded his authority by "interpreting raw medical data." (Dkt. No. 13 at 9-10.) This argument is also without merit.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1546(c). The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and his decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In this case, the ALJ found the opinions of state agency physicians Dr. Zukowsky and Dr. Amado, rendered on August 20, 2020, and January 8, 2021, respectively, to be

partially persuasive. (AR 25, citing AR 167-71, 966-84.) These physicians opined that Plaintiff did not have a severe mental impairment and had only "mild" limitations in the four functional areas constituting the paragraph B criteria. (AR 25.) In finding these opinions partially persuasive, the ALJ, accounting for the other evidence of record, reasonably found that Plaintiff had greater limitations than those proffered by these physicians. The ALJ also reasonably found Dr. Bittleman's opinion that Plaintiff would be off task more than twenty percent of an 8-hour workday due to schizoaffective disorder was not persuasive because as an internist, Dr. Bittleman was not a specialist in mental health conditions. (AR 26, citing AR 1334-37.) Under the regulations, the medical opinion of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to their area of specialty than the medical opinion of a medical source who is not a specialist in the relevant area of specialty. *See* 20 C.F.R. § 404.1520c(c)(4).

The ALJ found Dr. Singh's September 26, 2022 opinion to be partially, rather than fully, persuasive. He found that Dr. Singh's opinion was consistent with evidence in the record, except the ALJ determined that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, rather than the mild limitation found by Dr. Singh. (AR 27-28, citing *id.* at 1312-17.) In other words, the ALJ again found Plaintiff's limitation to be greater than that proffered by a physician. Similarly, the ALJ found the opinion of Dr. Miller, the testifying medical expert, to be partially persuasive. Dr. Miller testified that Plaintiff's medical improvement started in 2020, and Plaintiff continued to improve in 2021. (AR 92.) Dr. Miller opined that the reason Plaintiff had previously decompensated from a high level of functioning was that she had been noncompliant with her medications. (AR 93.) As of September 2, 2020, Dr. Miller believed that Plaintiff no longer had any limitations in the four domains constituting the paragraph B criteria. (AR 97-98.) The ALJ reasonably determined that Dr. Miller's opinion that Plaintiff experienced significant medical improvement since September 1, 2020 was supported by the record. (AR 28.)

However, the ALJ, noting that Plaintiff's treatment records with Dr. Singh indicated periods of exacerbation, also found that Dr. Miller's opinion that Plaintiff had no limits with respect to the paragraph B criteria was not supported by the record. (*Id.*)

The Court finds no error with the ALJ's analysis. The Commissioner's regulations specifically direct the ALJ to evaluate all medical opinion evidence according to certain factors, including its consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4). The ALJ is also required to consider the degree to which a medical opinion is supported by other evidence in the record. *Id.* § 404.1527(c)(3). "The fulfillment of [this] regulatory dut[y] is not tantamount to rendering a medical opinion." *King v. Comm'r Soc. Sec. Admin.*, No. CV-19-05669-PHX-SPL, 2020 WL 5587429, at *5 n.12 (D. Ariz. Sept. 18, 2020); *see also Scott E. v. Saul*, Case No. 19cv2132-RBB, 2021 WL 568788, at *7 (S.D. Cal. Feb. 16, 2021).

In conclusion, after considering the record as a whole and evaluating both the evidence that supports and detracts from the Commissioner's conclusion, (*see Desrosiers*, 846 F.2d at 576), the Court finds that substantial evidence in the record supports the ALJ's decision.

## IV.    CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. The Clerk is directed to issue a judgment and close this case.

**IT IS SO ORDERED**.

Dated:  March 19, 2026

Hon. Steve B. Chu
United States Magistrate Judge

15

24-cv-2023-SBC